UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

THAO TRAN and ANDREW HUNGLAM NGUYEN,

Debtor(s).

No. 09-10549

_____

Memorandum Regarding Conduct of Debtors' Former Counsel

_____

I. Background

The schedules filed in this Chapter 7 case by attorney Joel J. Margolis contained horrific omissions, including a furniture store filled with furniture, a $13,000.00 bank account, a 2008 Mercedes automobile, and real property. These omissions only came to light through serendipitous notification by the bank where the deposit was held and by diligent investigation by the Chapter 7 trustee, Jeffry Locke, and his employees.

Pursuant to § 704(a)(6) of the Bankruptcy Code, Locke had a duty to object to the debtors' discharge. He originally sought to do so based on the false schedules, as § 727(a)(4)(A) forbids a discharge to debtors who make a false oath. However, it soon came to light that the debtors had a defense to this claim based on Margolis' conduct. They had never signed the schedules Margolis filed on their behalf.

1

The court denied the debtors' discharge on other grounds. However, during the course of the trial and after listening to Margolis' extensive testimony on the witness stand, it became clear to the court that action against Margolis himself was required for three reasons: First, the court had a duty to review his fees pursuant to § 329(b) of the Code; second, Margolis had to be sanctioned pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure for filing schedules not actually signed by his clients; and lastly (and most importantly) Margolis appeared so venally incompetent that some action was necessary to protect other debtors. The court accordingly ordered Margolis to appear and show cause why his fees in this case should not be returned, why he should not pay a monetary fine, why he should not be suspended from practice for a time until he completed remedial education requirements, and why he should not be permanently enjoined from allowing the terrible office practices he employed to continue.

Margolis concedes that his fees of $2,400.00 ought to be returned. He also concedes that some sanction is in order for his Rule 9011 violation, although he argues that the fine should be modest because his error was caused by inadvertence and not intentional misconduct. His main opposition is to the court's suggestion that he should be suspended from practice and his improper office practices should be enjoined. The court will discuss these matters in order.

II. Fees

Margolis concedes that his fees in this case were not earned. While the court would ordinarily order the fees returned to the debtors, in this case Margolis' failure to properly advise them resulted in their conversion of the bank account and other assets which belonged to their bankruptcy estate. Margolis shall therefore be directed to return the fees to Locke to partially compensate the bankruptcy estate for its losses.

III. Rule 9011 Sanctions

Margolis seeks a light slap on the wrist for filing unsigned schedules, arguing that his failure

2

was negligent and not intentional. However, a heavy fine is required due to the very serious nature of the offense, even granting that the cause was negligence.[1] A complete and honest listing of all assets is at the very heart of bankruptcy relief. A debtor simply cannot, under any circumstances, be allowed to defend against an accusation of filing false schedules by demonstrating that he never actually signed them.

When an attorney electronically files a schedule on behalf of a client, he is certifying to the court that he has the schedule in his physical possession bearing the original signature of the client. If the certification is false, the attorney is subject to sanctions pursuant to Rule 9011. *In re Brown,* 328 B.R. 556, 559 (Bkrtcy.N.D.Cal 2005). In this case, the negligence which caused the unsigned schedules to be filed was gross negligence, as outlined below, and was a foreseeable result of Margolis' incompetence and his failure to give his uneducated staff any meaningful supervision. A substantial fine is necessary to uphold the integrity of bankruptcy schedules as well as give Margolis incentive to make sure his negligence is not repeated. Accordingly, Margolis will be ordered to pay a fine of $7,500.00. Provided, however, that all but $2,500.00 will be stayed so long as Margolis pays the $2,500.00 to the Clerk within 20 days of entry of an appropriate order and so long as Margolis does not again, in any case, file schedules not actually signed by his client and in his physical possession.

IV. Discipline

Margolis argues that the court should make no orders regarding his conduct, but instead refer him to the District Court Standing Committee on Professional Conduct. If Margolis' actions in this case were a one-time occurrence, the court would be content to refer the matter to the State Bar of California or the District Court. To the maximum extent practicable as far as punishment is concerned, the court will defer to them as to discipline for Margolis' conduct in this case. However, the court has

---

[1] If the offense was intentional, criminal contempt would be appropriate and Margolis would never again practice bankruptcy law, or perhaps any law.

3

the inherent authority and responsibility to regulate the conduct of attorneys who practice before it, independent of formal disciplinary proceedings. *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 439 (9th Cir. 1983).[2] The recurring nature of Margolis' conduct requires the court to take action now in order to protect future clients in cases Margolis continues to file.

Margolis' wife is his principal assistant in his law practice. She is not a lawyer. Her main value is that she is Vietnamese. Margolis advertizes in Vietnamese-language periodicals, and has filed approximately 100 bankruptcy cases for Vietnamese clients. If the court does not put a stop to the worst of Margolis' practices now, and does not insist that he immediately educate himself on the proper role of a lawyer in a bankruptcy case, then it will be permitting the continuing victimization of the Vietnamese community. While the court is content to let other disciplinary bodies consider long-term sanctions, some action is required now and no other entity is prepared to act immediately. This court must exercise its inherent authority to protect the public from harm.

Before discussing why immediate action is necessary, the court first addresses Margolis' argument that he is somehow hamstrung in laying out his defense because of the attorney-client privilege. The court sees no merit in this, as Margolis was called as a witness by his former clients in the discharge trial and testified on the stand at length as to his conduct. He answered every question and no assertions of privilege were made. The findings below are made based on the testimony of Margolis himself. His lack of competency and shoddy office practices were clear from this testimony.

It is very easy to see how the debtors ended up losing their discharge. Margolis did not understand the importance of the schedules or his role in preparing them. He did not understand that a lawyer must interview the client himself to probe every aspect of a client's situation before a bankruptcy can be filed. A bankruptcy lawyer needs to know family law, to make sure all marital

---

[2]In addition, Northern District Local Rule 11-6(a), made applicable to bankruptcy cases by B.L.R. 1001-2(a), provides that the court may take "any or all" enumerated acts to discipline an attorney, including civil contempt, reference to the Standing Committee, reference to the State Bar, and imposition of "other appropriate sanctions."

4

debts and assets as well are properly scheduled; a bankruptcy lawyer needs to know business law, to make sure that assets and debts related to partnerships, former partnerships, corporations and other entities are properly scheduled; a bankruptcy lawyer needs to know probate law, to make sure that inheritance rights (including those that arise *after* filing pursuant to § 541(a)(5)) are properly scheduled; a bankruptcy lawyer needs to know real estate law, to make sure that all interests in real property are properly scheduled; a bankruptcy lawyer need to know the law of secured transactions, to make sure that secured debts and collateral are properly scheduled; the list is endless. There is no substitute for detailed questioning by an attorney.

Margolis understood none of this. He allowed his wife, a non-lawyer, to conduct the initial interview with the debtors, advise them as to the chapter they should file under, and prepare their schedules. Margolis himself spent a total of only about 15 minutes, perhaps less, speaking to the debtors himself.[3] He completely abdicated his responsibilities to his clients, leaving them in the hands of untrained non-lawyers.

Worse, Margolis completely failed to instill in his own staff the importance of the schedules or the need for complete honesty and disclosure. Thus his staff, without even consulting him, removed the Mercedes from the initial draft of the schedules when the debtors requested that mention of it be deleted. Margolis' cavalier attitude toward the schedules was contagious; it was transmitted first to Margolis' staff and then from them to the debtors themselves. The debtors, having no other frame of reference, got the idea that it was normal and expected that they conceal property they wanted to keep notwithstanding their bankruptcy. That led directly to denial of their discharge.

Margolis did not know, and may still not know, that the primary duty of a debtor's counsel is to make sure the schedules are accurate and complete. The attorney must use all of his or her training

---

[3]These facts come from Margolis himself. Trial record, January 20, 2010, 11:21 A.M. (wife did initial interview); 11:26 A.M. (staff knew about real property, Mercedes); 3:14 to 3:22 P.M. (wife did initial interview, made decision to represent debtors, had "substantial input" in selection of chapter, Margolis spent 15 minutes or less himself with debtors before filing, left schedules to non-lawyer employees).

5

Case: 09-10549    Doc# 89    Filed: 04/02/10    Entered: 04/02/10 12:50:57    Page 5 of 7

and experience to make sure that an asset or a debt is not inadvertently omitted.  When an attorney knows that a debtor is not being completely truthful, the attorney's responsibility is to insist on truthfulness and refuse to represent a debtor who does not comply.

For the foregoing reasons, a permanent injunction, effective immediately, will be issued.  It shall provide:

1. Margolis or another licensed attorney must conduct the initial client interview in all bankruptcy cases.

2. Margolis or another licensed attorney must spend at least one hour counseling the debtor and making sure that all assets and debts are discovered and scheduled.[4]

3. Margolis may not permit his wife or any other non-attorney in his employ to give any legal advice whatsoever to any of his clients, including selection of an appropriate Bankruptcy Code chapter.

In addition, Margolis will be suspended from bankruptcy practice in this district effective thirty days after an appropriate order is entered, and may not thereafter appear in a bankruptcy court in this district or file any petition or pleading in this district without the prior leave of a bankruptcy judge or district judge of this district, unless before that time he has completed at least 10 hours of continuing education in elementary bankruptcy law, procedure and ethics.[5]  Such suspension will take place unless Margolis has filed a certification of compliance, outlining his training in detail, by the 30th day.

V.  Other Provisions

In addition to the above sanctions and orders, Margolis will be referred to both the Standing

---

[4]Competent debtors' counsel will laugh at this requirement, as they know that two or three hours, often more, are the norm.

[5]The court does not care where Margolis obtains this education, but notes that videos meeting this requirement, eligible for full MCLE credit, are available free of charge at this court at any time.  The court will therefore brook no delay based on availability of courses.  The court stresses that the training must be elementary in nature, designed for attorneys new to bankruptcy practice.

6

Case: 09-10549    Doc# 89    Filed: 04/02/10    Entered: 04/02/10 12:50:57    Page 6 of 7

Committee on Professional Ethics and the State Bar of California for such additional discipline as either or both may think appropriate.

The Clerk shall transmit a copy of this Memorandum and the Order made pursuant to it to the United States Trustee, with the court's recommendation that all Chapter 7 trustees in the district undertake a review of Margolis' past and current cases in light of the unreliability of schedules prepared by his office.

An appropriate order will be entered.

Dated: April 2, 2010

Alan Jaroslovsky
U.S. Bankruptcy Judge